Good morning. Courtney Nottage on behalf of the appellant, Citizens for Lightford. Good morning, Your Honors. Christopher Turner, the Illinois Assistant Attorney General, here on behalf of the respondents. You understand you have to reserve some time for your rebuttal? Yes. I believe I will be very short. Okay. Well, we've read the briefs. Yes. You know the record. Yes, yes. And you understand the issues. Go ahead. Very good. May it please the Court. I'd just like to go through three sections. Section 9-10, Section 9-28, and of the election code. And let me just say this. Growing up in the Chicago legal community, I had the opportunity to meet the acquaintance of a retired federal judge. And in those situations where I would go to this retired judge, there would be tough cases. And he would say to me, Courtney, read the statute and think great thoughts. This is now one of the cases that I would have gone to that judge to talk about. Because the statute is very clear on its face. All the provisions that I'm about to talk about, I do not believe are subject to any other interpretation but what the statute actually says. So how do we get to Section 9-10 of the election code? Citizens for Lightford was assessed a $5,000 penalty for not complying with Section 9-C of the election code. Where does that say that? It says it in the assessment notice. 9-10-C says very briefly, you, committee, must file your D-2 financial disclosures with the State Board by January 20th of a given year. Citizens for Lightford did that. It was that particular statute. Now, your argument that the way in which Citizens for Lightford filed that report was improper. It was improper because it didn't comply with Section 9-28, which is the statute that says committees that are over a certain threshold of $10,000 must file these reports electronically. However, Section 9-28 does not say anything about penalties, the ability to impose a fine on a committee for not filing that report electronically. So what we have here is, you've read the briefs, a senator, a state senator trying her very best to comply with the law, hiring individuals that turned out to be not to be competent and they were dishonest in stealing money from the committee's fund. So what does she do? She hires another person to assist her in auditing the committee, attempting to rectify the books and make everything in compliance with the statute. So the board, in its infinite wisdom, listens to the senator, takes what she has said and says, we are going to impose the maximum penalty against you, which is $5,000 under the statute. And so that's why the committee is here today, because that, in the committee's opinion, was not a fair imposition of a fine. So you're telling us this was the maximum penalty? Correct. $5,000. So as you read through the papers, there is no statutory authority to impose such a fine for not filing this report electronically. And my papers go into, look, the board staff makes audits of these committees, and no matter if they audit 20,000 reports or 12,000 reports, generally speaking, you wind up with 1,400 reports that have to be amended. And in my experience, most of these committees are trying their very best to comply with the law, and those amendments are, there's a great degree of probability that those amendments stem from the fact that people have made mistakes. They're not being dishonest. They're not trying to withhold information. Counselor, you know, what bothered me in reading this is that after your client got notice that she had 30 days to file electronically, you guys waited for like, and I don't mean you, because obviously you weren't there, it would have been undone, but they waited some 10 months or 11 months to actually electronically file. Right. So, Justice, the committee never actually received that notice. That's another part of this appeal. I look at this appeal as, did the committee comply with the statute? We believe that it did. But then when you start looking at the facts of the case, did the committee receive a notice that said, you filed this improperly, and then you have 30 days within which to file your report electronically? And there's nothing in the record that suggests that this committee ever received this notice. Now. Is there anything in the record that shows that there was no notice sent? Or that it wasn't received? Yes, Senator Lightford did testify before the board and submitted a written letter that said, and on one occasion she said, this was the first time I'm hearing of this. But we don't have a report of proceedings as to what went on before the board, do we? Yes, we do. We do. I have cited to it in the transcript. And she has submitted a letter indicating that she had learned of this in the beginning of 2011. So, this was supposedly took place in January of 2010. She did file the report on paper in January 2010. So, the notice, if it were sent and received, it would have been somewhere in February of 2010. Attached to the respondent's brief are four generated letters that appear now that are addressed and does state what you just said. Yeah, that's what was disturbing to me, that there was evidence that the letters were sent informing her that she had to file a letter. I mean, a count of a number of letters. Was there more than one? There were four letters, but two... And she never received any of them? No. None of them. None of them. None of them. The letters... You know, it's also of great interest, and it's not part of the record, and it won't be part of our decision either, but I know, as a matter of fact, when you go over there and you file it non-electronically, they tell you that, and they tell you, hey, if you'll wait a few minutes, we'll show you how to do it electronically. We could do it right here? Did you know that? No, I have never experienced the board staff... Yeah, that's normally what they do. According to Senator Lightford, her and her husband went to the board to receive assistance in filing this report, and according to Senator Lightford, nothing was ever discussed with her about filing her report electronically. But I would say that where is the harm? Because although the report was filed on paper, it was scanned and then made available on the Internet the same day in which it was filed on paper. So where would the harm be? Council may say it's not searchable. Well, we disagree with that. Anytime you key in the word Lightford or any other name, a committee name, that report will come up. It may not be searchable to search a contributor's name and have that contributor contribute it to the Citizens for Lightford and some other committees. Some people like to see where Courtney Nottage has donated to Campaign X and Campaign Y, but the crux here, and I've cited some of the legislative history in the briefs, is that particular candidate or is that particular committee's expenditures and contributions available for all to see? And Board Chairman McGuffet says it was up there for all to see. So again, I would just go back to no harm, no fault. And in terms of the A-1, that's Section 9-10B-5. That is where if you receive contributions within the 30-day period of an election, you must file those A-1 forms listing those contributions within two business days. Here, contributions were received on November 1st, the day before the November 2nd election, and the consultant that Senator Lightford had hired had honestly, mistakenly thought, because the two days within which to file, one of them fell out of the two business days. November 2nd. Therefore, it was not necessary to file the A-1s. And the hearing officer, even in both of her reports, said this was an unintentional mistake. And the last time that the committee had an A-1 violation was 2003, some eight years prior. So again, the committee believes that the Board was very harsh in imposing these penalties. Now, they gave her the lightest penalty that they could give, though. If they were going to impose the penalty, didn't they get rid of it? Yeah, the 10%. It was reduced 10%. But the Board does, in this instance, have the discretion not to impose any penalties, if it so desired. And I would like to reserve any time that I might have, unless you have. Well, how do we change this? I mean, how does the appellate court, I mean, what do we do? What do we say, that this law is unfair, it's unconstitutional, or they're too harsh? I mean, where, how do we do that? You tell me how to do it. This is a first. The court could say that Citizens for Life, when it comes to 9-10-C, comply with the law. That's the law. Okay. If we don't say that, how do we say the penalty is overly harsh, though? Especially the one that, when they give her the smallest penalty. Okay. May I address that? Because it's two prongs. That's one penalty, and that's the second penalty. The first one is the committee complied with the law, and if the Board would like to impose penalties for not filing electronically, it should see legislative authority to do so. The Board has... No, I think the question was if we find that they did have the authority to impose the fine in reading the three different pieces of legislation together. Okay. Yeah, if we read everything together, the statute that allows, that requires electronic filing, and the other statute, and the statute that allows the Board to assess a violation for failing to file electronically. You see, here's the problem. When we take this job, you know, we have to raise our right hand, and we take an oath, see, and that oath is that we're going to follow the laws of the State of Illinois. Right, right. Okay. Okay. So you tell me, after taking that oath, how do I change what they did when they followed the law? But they did not follow the law with regard to the $5,000 penalty. How is that? The statute on electronic filing, 9-28, does not provide... Yeah, but we have to read all the statutes together, see. We have to read them together to make an interpretation. We can't just take one. If we take them all together and we see that they have the authority to do this, how could we change this? That's what our question is. And there was this question, how do you reduce the $5,000 if we think they did have the authority to do it, but they imposed the maximum fine that they could impose? Well, I would go to the facts of the case, that this committee has... See, we have to do it by law. I mean, show me a case that says that we could do this thing that you're asking us. Show me a case out there. Do you have a case? No, I do not have a case. I do not have a case. That would show... See, that's what we do here. We try to follow the law. It's either by case or it's by a statute. Right. See, we can't come out of the air. The board's regulations, if you put them all together, the board's regulations bring us the concept that a paper filing is considered not to be a filing if it was required to be electronically filed. And are you saying that they didn't have the right to enact that regulation? Yes, that's what I'm saying. 9-28 does not give them the authority to impose a penalty or to promulgate those regulations. It does not. I cite that in the brief. It says the board shall by rule provide for the electronic filing of expenditure and contribution reports as follows. And what follows? There's nothing in 9-28 that talks about a penalty. Nothing. So I would humbly, respectfully... Yeah, but you're just picking out one part of a statute. You're not talking about everything together. See, that's the problem. Well... I mean, you want us to just isolate something. See, we can't isolate anything. But the statute 9-10C says the board shall assess a civil penalty not to exceed $5,000 for a violation of this subsection. That's in 9-10C. It doesn't say of this subsection and 9-28. Our position is the court, as Your Honor said, must follow the law. The statute says what it says. It doesn't give the court the leeway to bootstrap or bring 9-28 in. Well, if we accepted your position, then how would they ever enforce 9-28? They would have to go to the legislature. And let me back up. There are committees all the time that are paying these fines. They do. But some of the committees, and I have represented an infinite number of committees, but I have never had this particular issue. And for the board to be as strident as it was in this case. And it just sat wrong with the committee and how the senator was treated based on the facts. And the facts of 9-28 says that, I'm sorry, the words of 9-28 says that the board shall implement a plan to assist these committees and candidates. So to your point, and to your, Justice Gordon, as well, that if it is the normal placer over there to say, hey, if you wait a minute, we'll help you file electronically, knowing this committee, they would have stayed there and had it done. Because this committee had no other resources or persons to help with the filing of this report. To the A-1, I respectfully say that the reduction of 10% to $3,025 is reasonable. But the statute says it can take into consideration these other factors, which is the last time it occurred for an A-1 violation, not the other violations, but for an A-1 violation, was 2003. And the hearing officer witnessed the consultant. The consultant sat there and said, I made an honest mistake. And it's a reasonable interpretation for a person to say, we received these funds within the 30-day period prior to an election. Why must I then file these A-1s after the election occurred? It's reasonable. So if there's any other questions, I... Okay. Thank you. May it please the Court, Your Honors, Counsel. This Court should affirm the Board's final order imposing the $8,025 penalties against the committee. Because those penalties were both authorized by the election code, and they were neither arbitrary nor unreasonable. And we've got two separate sets of violations here. The first one is the violation of Section 910, subsection C. That's the semi-annual report. But they didn't file electronically timely. And then the other are the 20 violations of the Schedule A-1s, those are the large contributions which are required. Now what the committee seeks to do here is avoid the plain language of the Campaign Disclosure Act. Particularly looking first at the semi-annual report requirement, that's Section 9-10C. I'll refer to it as 10C, Your Honor, if that's all right. But that plain language there, inside, in the Campaign Disclosure Act, required that committees file their semi-annual expenditure and contribution reports by January 20th, or they would be fined. And when read in light of Section 28, that those committees with sufficient assets must, that filing of the expenditure and contribution reports must be done electronically. As Your Honor has pointed out, and as we cite to the cases, you read the statute, you must read all of the provisions in conjunction with one another. Here, Section 28 makes play that for four committees with sufficient assets, each committee must read the statute in conjunction with one another. And that, Your Honor, means filing electronically. Now, we've not ever argued that these provisions are ambiguous. They are clear, and they are straightforward. The principle that courts should read a statute with provisions in light of, as a whole, and each, construe each provision in light of the other provisions, is how you read the plain language. What counsel wants you to do here is assume that separate sections of the same statute are somehow separate statutes. That simply isn't the case. We are all, the relevant provisions here are both in Article 9 of the Election Code. That's the Campaign Disclosure Act. They are both interrelated. They both have to do not only with the filing of financial reports, but they specifically refer to the same report, the expenditure and contribution reports. One tells you when those, one governs the filings, when they must be filed. The other one tells you how they must be filed. They are clearly interrelated and point to one another. There is no, this is not a complicated argument. In fact, the Public Act, the State Gift Ban Act, which amended Section 28 in order to mandate electronic filing, also simultaneously amended Section 10C and added this specific language in that statute, which required penalties for late filing. So these statutes, these sections are part of the same statute, and they point, they explicitly point to one another. Now, counsel also raises a question there about where is the harm here. Well, regardless of where the harm is, this is the plain language of the statute. That is, the legislative intent reflects that the General Assembly was requiring electronic filing, requiring committees with sufficient assets to file these semiannual reports electronically. And yes, actually it does make a difference to the website. There is a difference. The data is not electronically searchable anymore. So if I want to find out, as actually counsel pointed out in his reply brief, that one of his interests here is to make sure that candidates serve the will of the people, not the will of lobbyists. If I'm interested in a particular company, a media company such as Comcast or someone else, I want to know who they're giving money to. I can go out to the Board's website and make that search, and I will find out each and every individual contribution that Comcast gave to each candidate, except for those which were made by paper filings. Those would not show up on the search. Now, they would today because they'd be filed electronically about a year later. But it wouldn't before. And the same thing goes for expenditures. Another concern that they have with the reason their contribution and expenditure reports is they want to know, and the people want to know, where is the money going from the committees. Committees give money to other committees, the candidates, to various other organizations. They want, you can do an election object to whoever is going to receive that money. If you do that search, again, the paper filings won't show up on that search. So there was a reason that the General Assembly required electronic filing. And regardless of whether or not we agree with the importance of that reason, they mandated it through the plain language of the law. Now, if the Court even were to find that the statutes were ambiguous for any reason, we also know that under the cited decisions, the Nader decision, the Wilson decision, that not only does the Board have the authority to issue regulations based on the express terms, but also by fair, what's by fair implication of the express terms. And here, under the powers and the duties given to the Board to ensure fair disclosure, to ensure the enforcement of provisions, to issue actually the final reports and specific instructions, to issue regulations to provide for electronic filing, they certainly by fair implication also have the authority to issue the regulation and issue here that required it. What's your response to their contention that they never received notices of their failure to file electronically? Well, Your Honor, there is, they did receive, the Board found that, the hearing officer twice found that it was sent, and there was evidence, some evidence in the record certainly to support that. That is the letters, the two letters, successive letters that the Board sent are in the Board's files, the specific files which are for all filings of notices for failures to file electronically. And that's adequate evidence to support that. Now, this is the first time that the Board has raised it here, up on appeal, that they never, even though the hearing officer found that notice was sent to them, below, in response, the chairman of the committee had never raised either at the hearing or beforehand, that the Board had not, any sort of claim or argument that they didn't receive the notice letter, even though the hearing officer made that finding. And then even in the appellate brief that was filed after the hearing, they never raised that argument. It was only finally in the final hearing, the second hearing before the Board, that counsel pointed out that he had never received a copy of that notice letter from the Board. That is not, in many ways, raising an argument, setting forth to the Board, saying, hey, here's an issue you have to look at, whether or not we didn't receive notice. They didn't put any evidence, there's no statement anywhere, by any officer of the committee, that they never received it. And so, this goes also to the advice, their defense that they'd somehow, state-given staff advice, that there was electronic filing was not required. Again, in fact, the officer for the committee had never made that specific kind of claim. They were just basically vague statements that, when she tried to file, and she was trying to file and trying to comply with the rules, we don't deny that, that she'd received advice that she could fax the information in, and that no one told her she needed to file electronically at that point. Well, that doesn't tell us what was raised, what real advice was given, whether she just said, hey, if I want to file this, do I need to mail it to you? And they say, oh, you can just fax the information in. We have no idea, really, what that means. That's not any kind of clear claim. But it really wouldn't matter anyway. Because, first of all, ignorance of law is an excuse. They had clear notice, through the code itself, that they were required to file electronically, through the board regulations, on the board's website itself. They had all this notice there, the required notice, that they were required to file, that the committee was required to file this electronically. However, they didn't. And even in addition, they received two letters afterwards. One, which I would have received in early February, telling them that they had not complied, that there had been no filing on paper, would be considered a non-filing, and must be refiled electronically. And then in March, again, a letter said, hey, you haven't refiled. So now you're in violation of the statute. With regard to the 10b-5 section, that's a section about the Schedule A-1s, the large contributions. Again, in order for the court to find that the board, basically in order to eliminate any penalty here, the court would have to find that the board abused its discretion by issuing the minimum penalty, or any penalty at all in that case. Counsel has not even argued here that there was an abuse of discretion, even said it was reasonable for them to give the lowest penalty. And it was clearly authorized by the statute. Not only was it explicitly authorized the board to issue a penalty, but then says that if you decide to issue a penalty, at that point to determine the amount, you should look at whether or not the violations were intentional, knowing, negligent, or even inadvertent. It recognizes that even an inadvertent one, even an inadvertent violation of the law still may warrant a penalty. Indeed, what counsel is effectively arguing here is that the board, basically saying that the board, any time it issues a penalty for an unintentional violation, that that would be an abuse of discretion. And that's clearly not what the law says. And also, just to correct, for looking back at the prior violations of the committee, when you look back at the prior violations in order to determine, Section B-5 says you look back at any violations of Section 10, not just 10b-5 itself. So he was accurate that the prior Schedule A-1 violations were back in 2001, 2002, 2003. I think the most recent was 2003. But then there have been other violations, disclosure violations of Section 10, later on, I don't know the exact, but in 2005, 2007, and 2008, and then again another one in 2002. So unless you guys have any questions, we respectfully request that the court affirm the board's final order issuing the penalty in this case. Why do you think they hit the committee with the maximum on the first violation? It seems a little incongruous that they got the maximum on one and the other. Correct. Why is that? I'm not so sure that this was officially raised, but I mean, why is that? Why did they get hit with the max? Because it's a strict application of the regulations for how you calculate the penalty. You look at the penalty under the regulations, this is for the semiannual report, so the 10c violation. You look at, first of all, how many prior violations there have been, disclosure violations, and then based on how many there are, you then give a daily, there's basically a number you peg, like whether it's $50, $100, $200 a day. Hopefully the 200-something days that it's laid, is that how you calculate it? Correct. I believe it's the business days, because it came up to 234, which was less than the period. But the calculation of days, it already surpassed the maximum at that point, so they just gave the $5,000. And that's how it comes out. Now, since then, the version of the statute that's not at issue here, in 2011, it was amended, same provision, in order just to provide the discretion to the board to consider in doing these violations whether or not, in determining the amount of violation that they could also look at, whether it's knowing or negligent or inadvertent. That's been issued since then, but that wasn't the case back then. In straight application of the board's regulations, this was the  case. Real briefly, today we're hearing the statute is clear, unambiguous, plain. The brief, though, says totally different. The statute is ambiguous, therefore you have to look at the regulations, you need to look at other sections of the code. You have to look at the legislative history. There's no legislative history cited in counsel's brief, none whatsoever. I did cite the legislative history surrounding Section 9-28. He used the example of Comcast. When Comcast makes contributions to other, the candidates or public officials, you can function Comcast and let it come up. Yes, it does do that. It happens instantaneously. But you can still look at citizens for Lightford. It might take you a little longer to key that in specifically to see if Comcast made a contribution to that committee. But if you relied on the fact that people had to electronically file and you put it in Comcast, you wouldn't necessarily go to look for Lightford because you think everything that Comcast did came up? That may be true in some instances, but knowing the political operatives that work in this environment, it's not the same, but the information is there. It is there. As far as the notices, I personally called Tara Kershaw. Tara Kershaw was the hearing officer in this case. Senator Lightford appeared before the board before I became involved. Chairman McGuffet recommended that she find a lawyer, and that's when she called me. I called Ms. Kershaw and asked her, may I have all the papers surrounding this case? What Ms. Kershaw told me was, it's essentially, you have it, you have the report, there are no other papers. So in the election law world, it's not real discovery, if you will. You're not propounding interrogatories or requests to produce. I attempted to get all that I could. Council filed a motion to supplement the record. Excuse me, a motion for an extension of time to make sure the record was complete. The two letters attached to his brief were not in the record, even though a motion was filed to allow it to be submitted. So miraculously, these letters appear to the appendix of the brief. And I like all the folks at the board of elections. I'm not casting any negative aspersions on anyone. But if we're going to proceed down this road in a somewhat trial-like level, the board would have to produce what it says that it has or has sent. And lastly, I would just say that you're all aware that if a fine has been imposed upon a candidate and the fine is not paid, that candidate is barred from appearing on the ballot. So anything that important to a public and official or a candidate, any candidate is barred from appearing on the ballot. Anything that would bar those persons from being on the ballot, we respectfully submit that that notice should be sent by certified or registered mail. Why can't that occur? Well, can we do that? I mean, we're not the legislature. That certainly seems like a good practice, but it's not required by any statute. But my question with regard to that is if, just from a review standpoint, if your contention is that we never got these letters and that all of a sudden they miraculously appeared and the hearing officer makes a finding that the letters were sent, we're in a position, aren't we, and tell me if you don't think so, that we'd have to say that that finding was against the manifest weight of the evidence. That is correct. And so I would respectfully suggest the counsel for the board said the letters were sent. That is the only person that said that. And at that time, the letters were never part of the hearing before the board. Again, those letters appear for the first time in the respondent's brief. So how could a finding be made at the board level that those letters were sent? I called the hearing officer asking for the paper. That's what I said. That's in the transcript before the board. I said that I had called, and there was none. So I'll just leave it with the court has the ability, the court has said on some occasion that the legislature should get involved in this, and if the board desires to do so, the legislature should get involved in this. If the board desires to proceed in such a way, like they are doing now, that they should seek legislative authority to do so. Thank you.